IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CV-344-FL

| | |
|---|---|
| VEOLIA WATER SOLUTIONS & TECHNOLOGIES SUPPORT, | ) ) ) |
| Petitioner, | ) ) |
| v. | ) ) |
| WESTECH ENGINEERING, INC. and NORDIC WATER PRODUCTS AB, | ) ) ) |
| Respondents. | ) ) |

ORDER

This matter is before the court on petitioner's petition to compel arbitration (DE 5) and motion for preliminary injunction (DE 9). Also before the court is the motion to dismiss (DE 24) by respondent Nordic Water Products AB ("Nordic Water"). The issues raised have been briefed fully and are ripe for ruling. For the following reasons, the motion for preliminary injunction and petition to compel arbitration are denied, and the motion to dismiss is denied as moot.

## BACKGROUND

Petitioner commenced this action on August 7, 2019, by filing the instant petition to compel arbitration, which seeks to have this court enforce an arbitration agreement included within a settlement agreement executed by the parties to resolve a prior patent lawsuit in this court, <u>Veolia Water Solutions & Technologies Support v. WesTech Engineering, Inc.</u>, 5:15-CV-592-FL (E.D.N.C.) (the "2015 EDNC lawsuit"). Petitioner seeks an order directing respondents to immediately proceed to binding arbitration in an allegedly pending "JAMS" arbitration proceeding, or any other arbitration that the court deems appropriate. (Pet. (DE 5) at 9). Petitioner

also seeks to enjoin respondents from proceeding or being involved with any litigation against petitioner, to include respondents' pending civil litigation in the United States District Court for the District of Utah, captioned <u>Nordic Water Products, AB, and Westech Engineering, Inc. v. Veolia Water Solutions & Technologies Support</u>, No. 2:19-CV-497-JNP (D. Utah) (the "Utah action"), which was commenced on July 16, 2019.

In support of the instant petition, petitioner relies upon 1) the parties' settlement agreement resolving the 2015 lawsuit, 2) a January 30, 2019, notice of infringement transmitted from petitioner to respondents, 3) a copy of the complaint for declaratory judgment filed in the Utah action, 4) petitioner's demand for arbitration filed with the "JAMS RESOLUTION CENTER" on July 29, 2019, including U.S. Patent 10,188,971 ("the '971 patent") and additional correspondence between the parties, 5) correspondence between the parties regarding JAMS arbitration proceedings.

Petitioner filed the instant motion for preliminary injunction on August 20, 2019, seeking to have this court order respondents to arbitration and enjoin them from proceeding in the Utah action pending resolution of the arbitration proceeding.

Respondent WesTech responded in opposition to the instant petition and preliminary injunction motion on October 4, 2019, relying upon 1) U.S. Patent 8,961,785 ("the '785 patent"), 2) a United States Patent and Trademark Office (USPTO) communication, 3) a USPTO website screenshot highlighting "Terminal Disclaimer" for the '971 patent; 4) correspondence between respondent Nordic Water and petitioner, dated March 6, March12, and April 10, 2019; 5) an "INFRINGEMENT CHART" related to the '971 patent; 6) correspondence from JAMS to the parties, dated August 5, 2019; 7) correspondence from respondents to JAMS dated August 5, 2019.

Petitioner replied in support of its motion and petition on October 15, 2019, relying upon correspondence between the parties dated July 28, 2019, and September 13, 2019.

On November 12, 2019, respondent Nordic Water filed the instant motion to dismiss the petition to compel arbitration, and a response in opposition to the motion for preliminary injunction, relying upon the same exhibits filed in conjunction with respondent WesTech's responses, as well as a motion to dismiss filed on October 28, 2019, by petitioner in the Utah case, and a declaration of Jonas Gunnarsson ("Gunnarsson"), CEO of Nordic Water.

Petitioner filed its response to the motion to dismiss and reply in support of preliminary injunction on December 10, 2010. Respondent Nordic Water filed its reply in support of its motion to dismiss on January 7, 2020.

In the meantime, respondents filed a response in opposition to the motion to dismiss in the Utah case on November 25, 2019, and petitioner filed a reply in support thereof on December 9, 2019.

## STATEMENT OF FACTS

The facts alleged in the petition to compel arbitration may be summarized as follows. Petitioner is a French company with its principal place of business in France. Respondent WesTech Engineering, Inc. ("WesTech") is a California corporation with its principal place of business in Utah. Respondent Nordic Water is a California corporation with its principle place of business in Sweden.

Petitioner owns patents for filter technology used in water treatment systems and processes sold to municipalities and industrial clients, which technology is developed by an affiliated entity, Hydrotech Veolia Water Systems AB ("Hydrotech").[1] As summarized in the petition, Hydrotech

---

[1] According to the petition, petitioner is a "wholly-owned subsidiary" of an entity denominated "Veolia Water," and that "[o]ne of Veolia Water's business units is Hydrotech," an entity based in Sweden. (Pet. (DE 5) ¶¶ 10-11).

designed a filter system in which, during filter rotation, "water held in . . . compartments passes from one compartment to a trailing compartment rather than being swept up by the rotary motion of the compartments." (Pet. (DE 5) ¶ 14).

In the 2015 EDNC lawsuit, petitioner claimed that respondent WesTech infringed the '785 patent, which is a disc filter patent owned by petitioner. (Id. ¶ 17). "After months of litigation, the parties engaged in mediation." (Id.). Respondent Nordic Water, who allegedly supplied the infringing disc filters to respondent WesTech and was involved in related patent litigation in Europe, participated in the mediation. At mediation, the parties, including petitioner and respondents, entered into a settlement agreement to settle the 2015 EDNC Lawsuit. According to the petition:

> At the time they entered into the agreement, [r]espondents knew that [p]etitioner had a related continuation patent application, based on the same patent family as the '785 patent, pending in the United States Patent Office (application serial no. 14/628,521, filed February 23, 2015). Respondents, as well as [p]etitioner, wanted to avoid the cost and disruption of future litigation related to the continuation application. As part of the settlement agreement, the parties first attempted to negotiate a license to avoid issues for future patents that may be granted in the same patent family. When the parties were unable to agree on license terms, the parties decided to craft a dispute resolution provision to streamline and provide for the quick and efficient resolution of any dispute regarding later-granted patents in the same patent family as the patent at issue in the EDNC Lawsuit. To that end, the parties agreed to an arbitration procedure for addressing disputes regarding any later-issued patents in that patent family, to include infringement and invalidity issues.

The relevant arbitration provision (hereinafter the "arbitration agreement") reads as follows:

> <u>Continuation Applications in USA</u>. In the event a future patent issues in the United States from the family of patents that includes the '785 patent and [Petitioner] believes that it is infringed by the redesigned manufactured, sold, or offered for sale by [Respondents], [Petitioner] shall provide notice to [Respondents]. The parties shall have ninety (90) days from the date of the notice to negotiate. If the parties fail to reach an agreement, they shall engage in mandatory binding baseball arbitration for determining the sole issue of an appropriate royalty rate, if any. The arbiter may consider issues relating to invalidity and non-infringement when deciding which tendered royalty rate to accept.

4

(Id. (quoting arbitration agreement (DE 5-1) ¶8)).

According to the petition, "the parties intended the arbitration agreement to efficiently resolve any issues regarding any later-granted patents in the same patent family." (Id. ¶ 19). This provision allegedly was entered into to allow for the complete resolution of these issues. "For example, the arbitrator could find the patent invalid or is valid but not infringed, and thus find no royalty is owed." (Id.). "The arbitrator could alternatively find that the patent is valid and infringed and award a particular royalty." (Id.). "The arbitration would also be conducted according to a 'baseball' format, meaning the parties would submit their proposed royalty rate to the arbiter in advance of a hearing, and the arbiter would be required to select one of the two submissions after conducting an evidentiary hearing." (Id.).

According to the petition, "[p]etitioner's continuation application matured into a patent as expected -- U.S. Patent No. 10,188,971 ("the '971 patent"), issued January 29, 2019." (Id. ¶ 20). "The '971 patent is directed to a disc filter used in treating water and wastewater." (Id.). According to the petition, the disc filters manufactured and sold by respondents allegedly infringe the '971 patent.

On January 30, 2019, petitioner notified respondents of its claim of patent infringement allegedly as required by the arbitration agreement. The parties allegedly discussed settlement and negotiated over the following ninety days. According to the petition, "[d]uring the negotiation period, [p]etitioner provided [r]espondents with a detailed infringement chart based on [r]espondents' disc filter marketing material." (Id. ¶ 21). Respondents allegedly did not respond to the merits of the infringement contentions or provide a substantive response to the infringement contentions. "Ultimately, no agreement was reached during the [ninety] day negotiation period." (Id.).

On July 29, 2019, petitioner "instituted a proceeding with JAMS, an arbitration body that is considered a leader in arbitrating complex and international disputes." (Id. ¶ 23). "Petitioner sent a copy of its demand for arbitration with JAMS to [respondents]." (Id. ¶ 24). "In response, [r]espondents refused to participate in the arbitration." (Id.).

In the meantime, on July 15, 2019, respondents commenced the Utah action, asserting that respondents "do not infringe, directly or indirectly, literally or by equivalence, any valid claim of the '971 Patent;" and "each claim of the '971 Patent is invalid." (Utah action, Complaint (DE 5-3) at 31)).

**COURT'S DISCUSSION**

Respondents' opposition to plaintiff's motion and petition to compel arbitration raises a threshold issue whether this court or the District of Utah should decide the question of a stay of the proceedings in the Utah case in favor of arbitration.

Under the "first-to-file" rule adopted by the Fourth Circuit, "[i]t has long been held . . . that, as a principle of sound judicial administration, the first suit should have priority, absent the showing of balance of convenience in favor of the second action." Ellicott Mach. Corp. v. Modern Welding Co., 502 F.2d 178, 180 n. 2 (4th Cir. 1974) (quoting Remington Prod. Corp. v. Am. Aerovap, 192 F.2d 872, 873 (2d Cir. 1951)); see Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 594 (4th Cir. 2004) (quoting Ellicott, 502 F.2d at 180 n.2). "Ordinarily, the court first acquiring jurisdiction of a controversy should be allowed to proceed with it without interference from other courts under suits subsequently instituted." Carbide & Carbon Chemicals Corp. v. U.S. Indus. Chemicals, 140 F.2d 47, 49 (4th Cir. 1944).

The first-filed rule applies in cases where "a prior suit [is] pending in which all issues could be tried with equal facility." Id.; see Remington Prod. Corp., 192 F.2d at 873 (applying rule to

6

first-filed case where "[a]ll the issues are, or can be, there joined"). Accordingly, to confirm applicability of the first-filed rule, this court, and other district courts in this circuit, consider "1) the chronology of the filings, 2) the similarity of the parties, and 3) the similarity of the issues at stake." Barrett v. USA Serv. Fin., LLC, No. 4:18-CV-155-FL, 2019 WL 1051177, at *5 (E.D.N.C. Mar. 5, 2019); Berger v. United States Dep't of Justice, No. 5:16-CV-240-FL, 2016 WL 3620752, at *8 (E.D.N.C. June 29, 2016); Dillon v. BMO Harris Bank, N.A., 16 F. Supp. 3d 605, 617 (M.D.N.C. 2014); Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003); see also Wakaya Perfection, LLC v. Youngevity Int'l, Inc., 910 F.3d 1118, 1124 (10th Cir. 2018) (considering "not only the chronology of events but also the similarities in the parties, issues, and claims").

Provided the first-filed rule applies, the court then must determine whether there nonetheless is a "balance of convenience in favor of the second action." Ellicott, 502 F.2d at 180 n. 2. A plaintiff in the first-filed action "is ordinarily entitled to choose its forum, and . . . other factors with respect to change of venue being equal, the case ought to be tried in the district court in which it was first filed." Id. at 180. With respect to venue and balance of convenience:

> Factors relating to the parties' private interests include relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law. The Court must also give some weight to the plaintiffs' choice of forum.

Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 62 n.6 (2013) (citations omitted); see Ellicott, 502 F.2d at 180 (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

7

In this case, the first-filed rule applies. Respondents commenced the Utah action on July 16, 2019, before petitioner filed a demand for arbitration with JAMS on July 29, 2019, and before petitioner commenced the instant action on August 7, 2019. The parties in both actions are identical. The issues presented in both actions are overlapping and interdependent, with the Utah action advancing respondents' claims for resolving the underlying patent dispute by declaratory judgment and the instant action advancing petitioner's claims for resolving the underlying patent dispute by arbitration.

Petitioner suggests that the instant case and the Utah action "are not the same." (Reply (DE 18) at 5). To be sure, the first was commenced by respondents and the second was commenced by petitioner, with diametrically opposed claims and theories on how the cases should proceed. But, as petitioner itself recognizes, the "JAMS arbitration," which it seeks to compel here, "and the Utah legal proceedings involve nearly identical issues." (Id. at 2). At bottom, both cases arise out of petitioner's notification to respondents on January 30, 2019, of its "claim of patent infringement" of the '971 patent. (Pet. (DE 5) ¶ 20). That claim is the controversy that petitioner seeks to arbitrate, and it is the same controversy that respondents seek to resolve through declaratory judgment in the Utah action.

Petitioner also argues that this court should refrain from application of the first-filed rule due to equitable considerations, such as forum shopping, anticipatory filing, or bad faith filing. The circumstances of the instant lawsuit, however, do not fall under any of these exceptions to the first-filed rule. Petitioner cites, for example, Davis v. Zuccarello, No. 1:16-CV-01086, 2017 WL 2729089, at *3 (M.D.N.C. June 23, 2017), for the proposition that the first-filed rule should be disregarded where the first action was "filed in the midst of settlement negotiations and when the action was filed with notice that the other party was about to file suit." (Reply (DE 18) at 5).

8

Neither of these circumstances applies here. While the parties did engage in negotiations triggered by petitioner's January 30, 2019, claim, the last communication in the record between the parties prior to commencement of the Utah action was on April 10, 2019. (See Resp. Ex. 6 (DE 16-7)). There is no evidence that petitioner communicated it was about to file suit or commence arbitration just before respondents filed the Utah action. By contrast, in Davis, the first filed plaintiff "filed this action in a race to the courthouse while giving the impression that he intended to pursue ongoing settlement discussions" and filed the action "the day before the expiration of the promised response period" in settlement negotiations. Davis, 2017 WL 2729089, at *4. In sum, exceptions to the first-filed rule are not applicable here.

Turning to convenience and venue factors, the record does not reflect "balance of convenience in favor of the second action." Ellicott, 502 F.2d at 180 n. 2. Some such factors are equally balanced or uncertain. For example, while petitioner protests personal jurisdiction in the Utah action, respondent Nordic Water protests personal jurisdiction here. Neither venue is entirely convenient for petitioner and respondent Nordic Water, based in Europe.

One significant factor in favor of transfer to the District of Utah is that this court's authority to enjoin the ongoing Utah action is questionable. Notably, the Federal Arbitration Act ("FAA") does not provide such authority, but instead suggests that relief in the form of a stay of pending litigation lies with the district court in which such litigation already is pending. Indeed, § 3 of the FAA provides that "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, <u>the court in which such suit is pending</u>, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the

agreement." 9 U.S.C. § 3. In this manner, only the court in which the ongoing suit is pending, here the District of Utah, has authority under § 3 to stay its own case.

The court recognizes that § 4 of the FAA, by contrast, allows a party to petition "any United States district court" for an order directing that arbitration proceed in the manner provided for in an arbitration agreement. 9 U.S.C. § 4. But, in this instance, an order compelling arbitration only would provide half of the relief sought by petitioner. Without an order enjoining the Utah action, an order compelling arbitration would not resolve the dispute between the parties.

Petitioner suggests that this court has inherent authority to enjoin a party from pursuing litigation in another court, citing Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 652 (2d Cir. 2004) and Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd., No. 10 CIV. 1853 (PGG), 2010 WL 1050988, at *4 (S.D.N.Y. Mar. 23, 2010). These cases, however, address the power of a federal court to enjoin a party from pursuing litigation in a foreign court in favor of arbitration under the FAA. See id. They do not address the authority of a United States district court to enjoin an action proceeding in another United States district court, as here, where the other district court is equally capable of evaluating the arbitrability of the underlying dispute under the FAA.

Although the United States Court of Appeals for the Fourth Circuit has not addressed the issue, the United States Court of Appeals for the Seventh Circuit has recognized that "[i]t is particularly rare for a federal court to enjoin litigation in another federal court." In re Jimmy John's Overtime Litig., 877 F.3d 756, 762–63 (7th Cir. 2017). Indeed, "there is precious little authority dealing with injunctions directed by a district court to a court of equal dignity—another federal district court." Id.

The court need not resolve definitively whether it has authority, as a theoretical matter, to issue an anti-suit injunction against the Utah action. For present circumstances, considering a balance of factors of convenience and venue, it is a compelling factor that the District of Utah is well-suited, in the first instance, to consider the issues of sequencing of resolution of issues of invalidity and non-infringement that are raised by both the Utah action and the instant action, together. See Carbide & Carbon Chemicals Corp., 140 F.2d at 49 ("[T]he courts of one District or Circuit must be presumed to be as able and as well qualified to handle litigation as those in another.").

Additional balance of convenience factors are neutral or favor the District of Utah. The alleged infringing party, WesTech, has a principal place of business in Utah and is alleged to have engaged in infringing conduct in Utah, where the product is marketed and distributed. Accordingly, evidence regarding infringement likely is located in Utah. While the court recognizes petitioner's allegations that settlement negotiations for the 2015 EDNC action occurred in North Carolina, the settlement agreement is not made part of the 2015 EDNC action, and there is no judgment in that action which this court is called upon to enforce.

In sum, in light of application of the first-filed rule and the balance of convenience factors, this court must abstain from exercise of jurisdiction in this matter. In the exercise of the court's discretion, to minimize prejudice to petitioner that may be caused by this determination, a transfer of the instant action pursuant to 28 U.S.C. § 1404(a), rather than a dismissal or a stay is warranted. See, e.g., Berger, 2016 WL 3620752, at *8; see also Chavez v. Dole Food Co., Inc., 836 F.3d 205, 220–21 (3d Cir. 2016) ("[A] court exercising its discretion under the first-filed rule should stay or transfer a second-filed suit. Even a dismissal without prejudice may create unanticipated problems."). Likewise, having determined that a transfer of the action is warranted, the court denies

without prejudice petitioner's motion for preliminary injunction and petition to compel arbitration, and denies as moot defendant NordicWater's motion to dismiss. The court expresses no opinion on the substantive issues raised by the instant petition to compel arbitration and motion for preliminary injunction, but rather leaves those issues for address in the first instance by the District of Utah.

## CONCLUSION

Based on the foregoing, the court declines to exercise jurisdiction in this matter pursuant to the first-filed rule set forth herein. The court, on its own initiative, TRANSFERS this matter pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the District of Utah, where a prior-filed lawsuit is pending between the same parties, <u>Nordic Water Products, AB, and Westech Engineering, Inc. v. Veolia Water Solutions & Technologies Support</u>, No. 2:19-CV-497-JNP (D. Utah). The clerk of court is DIRECTED to transmit a certified copy of this order and associated case file to the clerk of court for the District of Utah, and thereafter close this case. In light of the transfer of venue, the petition to compel arbitration (DE 5) and motion for preliminary injunction (DE 9) are DENIED WITHOUT PREJUDICE, and the motion to dismiss (DE 24) by respondent Nordic Water is DENIED AS MOOT.

SO ORDERED, this the 22nd day of January, 2020.

_____
LOUISE W. FLANAGAN
United States District Judge